# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| KRISTIN PETT, | Civil No. 18-66 (JRT/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION & ORDER** |
| COSTCO WHOLESALE CORP., | |
| Defendant. | |

Kyle S. Willems, **Tewksbury & Kerfeld P.A.,** 88 South Tenth Street, Suite 300, Minneapolis, MN 55403, for plaintiff.

Andrew L. Marshall, **BASSFORD REMELE P.A.,** 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for defendant.

Plaintiff Kristin Pett brought this negligence action against Defendant Costco Wholesale ("Costco") after sustaining permanent injuries during a slip and fall incident at Costco's store in Eden Prairie, Minnesota. Costco removed the case to federal court and now moves for summary judgment. Because the Court finds that genuine issues of material fact remain as to whether Costco met the duty it owed to Pett on the day of her fall, the Court will deny Costco's motion for summary judgment.

# BACKGROUND

## I.     KRISTIN PETT'S ACCIDENT

Kristin Pett is a resident of Eden Prairie, MN. (Aff. of Kyle S. Willems ("Willems Aff.") ¶ 6, Ex. E ("K. Pett Dep.") at 4, Jan. 10, 2019, Docket No. 28-5.) She has a mild

1

cognitive disability but is fairly independent in day-to-day life. (*See* Willems Aff. ¶ 8, Ex. G ("E. Pederson Dep.") at 8-9, Docket No. 28-7.) She is married to Justin Pett. (K. Pett Dep. at 5.)

On the morning of Sunday, May 22, 2016, the Petts went to a Costco store in Eden Prairie with Mrs. Pett's parents, William and Elaine Pederson. (E. Pederson Dep. at 11.) The Petts and Pedersons shop at the same Costco store approximately once a month. (*Id.*) They report that their Costco store tends to be busiest on Saturdays and Sundays, and is particularly busy on "sample days," when Costco employees serve samples of food and drink throughout the store. (Aff. of William Pederson ("W. Pederson Aff.") ¶ 3, Jan. 10, 2019, Docket No. 30; Aff. of Kristin Pett ("K. Pett Aff.") ¶ 5, Jan. 10, 2019, Docket No. 32.) May 22, 2016, was a sample day. (W. Pederson Aff. ¶ 3.)

The Pedersons completed their own shopping and then returned to their car in the Costco parking lot to wait for the Petts, who were still inside. (E. Pederson Dep. at 11.) When the Petts approached the cash register to check out, a Costco employee told them they could get two plants in addition to the six already in their cart at no additional cost. (K. Pett Dep. at 13.) While Mr. Pett held their spot at the cash register, Mrs. Pett walked quickly back to the area where the plants were located, which was on a stand in a side aisle between a freezer and a cooler. (*Id.* at 14; Aff. of Jeff Goto ("Goto Aff.") ¶ 10, Ex. B at 4, Dec. 21, 2019, Docket No. 23-1.) After picking up two plants from the plant stand, Mrs. Pett began making her way back toward her husband at the cash register. (K. Pett. Dep. at 15.)

At approximately 11:46 a.m., Mrs. Pett walked out of the side aisle where the plants were located toward the main aisle with one plant in each hand. (Decl. of Andrew L. Marshall ¶ 10, Ex. I at 11:46:16-46:18, Dec. 21, 2018, Docket No. 21-3.) As she turned into the main aisle, Mrs. Pett slipped, fell, and fractured her right ankle. (*Id.* 11:46:19; K. Pett. Dep. at 15.) It is not clear whether Mrs. Pett saw the water on the floor before she fell. (*See* K. Pett. Dep. at 15, 21.) She saw a puddle of liquid after the fall but does not remember exactly how large the puddle was. (K. Pett. Dep. at 15.) There was no cone or other warning sign near the puddle. (K. Pett Aff. ¶ 7.) A photo taken shortly after the accident shows what appears to be a small puddle of clear liquid next to the location where she slipped. (K. Pett Dep. at 34.) The photo also shows a smear through the liquid, possibly made by Mrs. Pett's foot as she slipped. (*Id.*) The location of the fall was about 10 to 15 feet away from the plant stand and next to a garbage can. (Goto Aff. ¶ 10 & Ex. B.) Following the fall, several employees and customers came to Mrs. Pett's aid. (K. Pett Dep. at 30.)

As a result of her accident at Costco, Mrs. Pett sustained permanent injuries, has incurred major medical expenses, has endured a great deal of pain, has missed work, and has been unable to participate in the many activities that she used to enjoy. (Notice of Removal ¶ 1, Ex. B ("Compl.") at 1, Jan. 9, 2018, Docket No. 1-2; K. Pett Dep. at 17-19, 24-29; E. Pederson Dep. at 16-17; W. Pederson Dep. at 10.)

## II.     COSTCO'S SAFETY PROCEDURES AND STORE CONDITIONS

To help protect customers from safety hazards, Costco trains its employees to recognize and report or repair unsafe conditions. (Willems Aff. ¶ 4, Ex. C ("Goto Dep.") at 30, 56, Docket No. 28-3.) Employees are required to conduct hourly "floorwalks," where they visually inspect the aisles of the store for safety hazards, shoplifters, and other problems. (*Id.* at 29; Willems Aff. ¶ 7, Ex. F ("Lessley Dep.") at 6, Docket No. 28-6.) In areas with freezers or coolers, employees also check temperatures as they conduct floorwalks. (Lessley Dep. at 6-7.) If an employee finds a hazard, including liquid on the floor, he or she must remedy the hazard or mark it while going to get help. (*Id.* at 8; Goto Dep. at 30-31.) Likewise, if a plant rack has recently been watered, employees may place a warning sign or cone near it in addition to looking for water on the floor. (Lessley Dep. at 8; Willems Aff. ¶ 2, Ex. A ("Craig Dep.") at 15, Docket No. 28-1.) Employees use a checklist during floorwalks to mark start and end times and to indicate that each zone was checked for hazards. (Goto Dep. at 29-30, 34.) The floorwalk checklist is signed by a manager after completion. (*Id.* at 29.)

On the morning of Mrs. Pett's accident, Costco employee Ken Lessley conducted a floorwalk during the 11:00 hour. (Aff. of Ken Lessley ("Lessley Aff.") ¶ 4, Dec. 21, 2018, Docket No. 22.) Lessley began the floorwalk at approximately 11:02 AM and finished at 11:48 AM. (*Id.* & Ex. A ("Checklist") at 2, Docket No. 22-1.) The two-page safety inspection sheet used by Lessley during the floorwalk included two places, one on each page, to record a start time and two places, one on each page, to record an end time. (Checklist at 2-3.) Lessley recorded the start time on both pages but recorded the end time

only on the second page. (*Id.*) He also recorded the temperatures of the store's freezers and coolers during the walk. (Lessley Aff. ¶ 5; Checklist at 2-3.) Lessley did not report any issues on the section of the safety inspection sheet reserved for documentation of hazards. (Checklist at 2.) He attested that he did not notice any liquid on the floor between the cooler and freezer near the location of Mrs. Pett's fall. (Lessley Aff. ¶ 5.) The on-duty manager signed off on the sheet. (Checklist at 2.)

Costco keeps racks or cases of plants and flowers in different areas throughout its Eden Prairie store. (Goto Aff. ¶ 3.) While some of Costco's plants are watered in the store, others are not. (*Id.; see also* Craig Dep. at 16.) Kevin Craig, an administrator at the Eden Prairie Costco, and Jeff Goto, the General Manager, state that the type of plants— geraniums—on the rack near where Mrs. Pett fell are never watered in the store. (Craig Dep. at 16; Goto Aff. ¶ 7.) Goto also states that plants watered in the store are located near the front of the store. (Goto Aff. ¶ 8.) However, Mrs. Pett remembers that the plants she picked out on May 22 from the rack between the freezer and cooler felt wet from being watered. (K. Pett Aff. ¶ 7.) Both William and Elaine Pederson report seeing water on the floor at times near watered plants in the Eden Prairie Costco store. (W. Pederson Aff. ¶¶ 7-8; Aff. of Elaine Pederson ¶¶ 8-9, Jan. 10, 2019, Docket No. 29.) Costco takes precautions to prevent accidents near watered plants, including placing cones near watered plant racks and checking for liquid on the floor. (Craig Dep. at 15.)

### III. PROCEDURAL HISTORY

Kristin Pett brought this action in Hennepin County in December 2017, alleging that Costco's negligence caused her to suffer permanent injuries. (*See generally* Compl.) Costco removed the action to this Court on January 9, 2018. (Notice of Removal at 2.) Costco now moves for summary judgment pursuant to Fed. R. Civ. P. 56. (Mot. for Summary J., Dec. 21, 2018, Docket No. 18.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### II. NEGLIGENCE

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). To establish negligence, "a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.*

Under Minnesota law, a business owner has an obligation to an invitee "to keep and maintain its premises in a reasonably safe condition." *Sears, Roebuck & Co. v. Barkdoll*, 353 F.2d 101, 102 (8th Cir. 1965). A business "is not an insurer of the safety of its customers but is required to exercise ordinary care for their safety." *Id.*

Pett does not offer evidence that any Costco employee caused the puddle of liquid to be on the floor. If a business owner has not caused a dangerous condition to exist, it may nonetheless breach its duty to customers if it "had actual knowledge of the defect or that the defect" or if "the defect . . . existed for a sufficient period of time to charge the operator with [constructive notice] of its presence." *Id.* The burden is on the injured party to make this showing. *Id.* In so doing, "[s]peculation as to the cause or duration of the dangerous condition is insufficient . . . ." *Grant v. J.C. Penney Corp.,* 2003 WL 22996915, at *3 (D. Minn. Dec. 18, 2003) (citing *Rinn v. Minn. State Agric. Soc'y*, 611 N.W.2d 361, 365 (Minn. Ct. App. 2000)). The plaintiff must provide evidence regarding how long the dangerous condition existed or "proof that defendant was generally careless in permitting" the dangerous condition to occur. *Sears Roebuck & Co.*, 353 F.2d at 103. *See also Peterson v. Costco Wholesale Corp.*, 2007 WL 518861, at *2 (D. Minn. Feb. 15, 2007); *Anderson v. St. Thomas More Newman Ctr.*, 287 Minn. 251, 253 (Minn. 1970).

Pett does not claim that Costco had actual notice of the dangerous condition that caused her fall. Thus, the Court must decide only whether the evidence, viewed in the light most favorable to Pett, is sufficient to support a finding that the puddle of liquid that caused Pett's fall was on the floor for a sufficient period of time that Costco had constructive notice of its presence or that Costco was generally careless in maintaining its floors.

In establishing breach, a plaintiff in a premises liability case "may draw upon favorable inferences from circumstan[tial] evidence to defeat summary judgment." *Do v. Wal-Mart Stores*, 162 F.3d 1010, 1013 (8th Cir. 1998). In *Kindem v. Menard, Inc.*, this Court found that circumstantial evidence alone could support a finding in plaintiff's favor in a slip and fall case. 2015 WL 5157518 (D. Minn. Sept. 2, 2015). There, as here, the plaintiff slipped and injured herself but could not say how long the dangerous condition that caused her fall had been present. *Id.* at *1. The plaintiff fell in an area of a Menard's store where expert evidence suggested the floor may have been especially slippery. *Id.* at *2. On the day of the plaintiff's accident, the store parking lot was slushy, causing customers to bring water into the store on their shoes. *Id.* at *1. Also, a surveillance camera caught another person slipping in the same area where the plaintiff fell. *Id.* at *7. The Court noted that, taken together, the circumstantial evidence could allow a reasonable jury to conclude that Menard's should have known of the slippery floor and was negligent in not maintaining it or keeping it dry. *Id.*

Here, Pett admits that she does not know where the liquid on the floor came from or how long it was there. However, the Court finds that circumstantial evidence could allow a reasonable jury to find that Costco's floors were in a dangerous condition on the

day of Pett's accident and that Costco should have known as much and taken additional steps to keep the floor dry.  On the day of the accident, Costco employees were handing out food and drink samples to customers.  The store was particularly busy, resulting in additional opportunities for spills.  Finally, Costco kept plants in the aisles where customers were walking with knowledge that those plants could cause water to drip onto the floor.  Indeed, Costco representatives acknowledge that areas around the plants often need to be cleaned up because of spills.  Pett testified that there was no warning that the area around the plants was wet.

Taken as a whole and viewing the facts in the light most favorable to Pett, the Court finds that a genuine issue of material fact remains as to whether Costco exercised the appropriate level of vigilance given the risks present in the area in which Pett fell on the day of her accident. This is obviously a very close case, but the Court believes there is sufficient evidence to allow a jury to determine whether Costco is at fault.  Accordingly, the Court will deny Costco's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 18] is **DENIED**.

DATED:  July 22, 2019                      _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                             Chief Judge
                                            United States District Court